UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
**SUN VALLEY DAIRY, LLC,**
a New Mexico limited liability company,

        Debtor.               Case No.

**DEBTOR'S (1) EMERGENCY MOTION FOR INTERIM AUTHORITY TO USE CASH COLLATERAL, AND (2) REQUEST FOR AN EMERGENCY HEARING TO AVOID IMMEDIATE AND IRREPARABLE DAMAGE TO THE ESTATE**

COMES NOW the Debtor, by counsel, and (1) moves the Court, pursuant to 11 U.S.C. §§363(c) and F.R.Bankr.P. 4001(b), for authority to use cash collateral during the period ("the Emergency Cash Collateral Period") beginning upon entry of an order resulting from this Motion, and running through the date that an order is entered herein granting Debtor continuing authority to use cash collateral pursuant to a separate motion for continuing the authority pending herein, and (2) requests the Court to schedule a preliminary hearing hereon on an emergency basis, pursuant to F.R.Bankr.P. 4001(b)(2) , and as grounds would show:

**Need for Cash Collateral Authority to Avoid Irreparable Harm to the Estate**

Debtor filed its petition herein on March 4, 2014, and is operating as debtor-in-possession under §1107 of the Bankruptcy Code. No Unsecured Creditors' Committee has been formed at this time. As more fully set out in the Declaration of Bruce Bonestroo, filed herewith, and in the other papers filed by the Debtor in the Court, including (but not limited to) any Schedules and Statements of Financial Affairs, of which the Debtor asks the Court to take judicial notice:

1. Debtor operates a dairy facility in Southern New Mexico, consisting of real property and improvements, equipment, live dairy cattle, feed inventory and related supplies, and milk

produced from the operations, which milk is sold by Debtor under contract to a dairy cooperative association.  In the course of such dairy operations, Debtor will incur various expenses in the ordinary course of business and expenses of this proceeding which must be paid in order to continue operations and in order to maintain and protect assets of the estate.  If Debtor is unable to pay various operating expenses, even for a short period of time, it will not be able to continue its operations, and the cattle in the herd will be harmed, and the milk produced in the operations will be wasted.  Upon any cessation of operations, the "going concern" value of the business will be lost.  Further, if such "going concern" value is lost or impaired, the marketability of the business, components of the business, and assets will also be impaired.  As a practical matter, the milk cows must be milked and fed daily, and the milk so produced must be maintained and sold.

### Creditors Believed to Have Claims Secured by Cash Collateral

2. As of the Petition Date, Debtor was subject to claims of approximately $15 million[1] to one of more of various farm credit institutions collectively referred to as "AG New Mexico[2]" which will be referred to herein as "AGNM"

3. Debtor believes that AGNM claims, *inter alia,* a security interest in the following property of the Debtor:

    a. goods, inventory, farm products, crops, government deficiency or program payments, accounts, intangibles, deposit accounts, and contract rights;
    b. improvements, equipment, facilities, and machinery;
    c. livestock;

---

[1] This Debtor and a number of its affiliates, two of which have also filed chapter eleven petitions, owe an aggregate of approximately $15 million, some portion or all of which may be owed by this Debtor.

[2] AG New Mexico, FCS, ACA, AG New Mexico FCS, PCA and AG New Mexico, FCS, FLCA.

d. proceeds of the foregoing,

and, for purposes of this Motion, Debtor does not contest such claims in amount, nor does it contest the validity of the security interests securing such claims.

4. Of the various forms of collateral securing the claims of AGNM, some constitute "cash collateral" as that term is defined in 11 U.S.C. §363(a), including particularly the proceeds of milk sold by Debtor to its dairy coop.

5. Debtors counsel has searched the New Mexico Secretary of State website to locate financing statements of record there, and based on the results of that search the Debtor asserts that there are no other perfected security interests in cash collateral, though there are certain financing statements relating to equipment leases, or other non-cash collateral.

6. In addition to the foregoing AGNM has additional collateral in the form of mortgages against various tracts of real property owned by the Debtor, mortgages against various tracts of real property owned by affiliates of the Debtor, and various forms of personalty owned by this Debtor and by affiliates of this Debtor, the fair market value of all such collateral being greater than the amount of the claims by AGNM against this Debtor and all such affiliates;

7. As of the Petition Date, Debtor owned various assets including:

a. Cash on hand and in deposit accounts totaling approximately $370,702.89;

b. Livestock, consisting of 1632 head of dairy cattle and various heifers and calves with a total value of approximately $2,299,800.00;

c. Inventory of feed having a total value of approximately $802,200.00;

f. Accounts receivable or contract rights for milk sold to the coop having a total value of approximately $unknown;

g. Real property having a total value of approximately $4,500,000.00

3

## Authority to Use Cash Collateral Sought by Debtor

8. Debtor has made a good faith effort to estimate its actual operating revenues and expenses during the Emergency Cash Collateral Period, which estimate is attached hereto as Exhibit 1;

9. Debtor requests the Court's order granting it authority to use cash collateral as follows:

   a. For the actual and necessary business expenses, including those set out in Exhibit 1 attached hereto, not to exceed 10% more than the amount of each line item of the Budget for period;

   b. To make any utility deposits and adequate protection payments ordered by the Court pursuant to 11 U.S.C. §366;

   c. To honor pre-petition payroll checks and fund payroll, and to pay all related taxes for pre- and post-petition payroll;

   d. To pay when due U.S. Trustee fees, if any;

   e. To pay professional fees and expenses incurred during the period, as such payment may be allowed by rules of the Court relating to the compensation of professionals, and subject to review and allowance as required by the Code and Rules during this proceeding;

   f. To pay such other expenses as Debtor and all cash collateral claimants may agree, in writing (including email) from time to time, or which the Court may order after notice to all cash collateral claimants, during the Emergency Cash Collateral Period;

## Adequate Protection Proposed for Cash Collateral Claimants

10. Debtor believes that the interests of Cash Collateral Claimants can be protected herein in that:

    a. Debtor proposes to provide post-petition, continuing and replacement liens on

post-petition assets ("Post-petition Collateral") of the same sort that AGNM has pre-petition liens on, and the post-petition proceeds and profits thereof, to secure the use of cash collateral, with such liens on post-petition assets to be subject to any claims, defenses or avoiding powers that the pre-petition liens of Cash Collateral Claimants might be subject to, and with such post-petition liens having the same validity and priority as the liens existing at the time of the filing of the petition,

        b. Debtor proposes to use cash collateral to insure, maintain and protect all forms of collateral securing the claims of Cash Collateral Claimants,

        c. Debtor has, or promptly will open a Debtor-in-Possession account and any other accounts to facilitate the Cash Collateral Claimant's ability to monitor cash collateral during this proceeding.

        d. Debtor proposes to make its premises and operations open to inspection by Cash Collateral Claimants during normal business hours and on 48 hour notice in order for the Cash Collateral Claimants to monitor operations, and to make its books and records open to inspection to the such creditors on reasonable request so long as it does not disrupt business operations,

        e. With the agreement of AGNM and the approval of the Court, Debtor proposes to pay interest on the claims of AGNM out of available cash collateral during this proceeding, or to make such other adequate protection payments as AGNM may agree to and the Court approve.

        f. Debtor proposes to file accurate and detailed operating reports in this proceeding, and to employ an accountant familiar with the Debtor's operations and with dairy accounting to maintain Debtors books and accounts, and to prepare such reports as are normally required by dairy operations, and by debtors in chapter eleven proceedings.

11. Debtor will attempt to comply with such other measures as the Court may determine to be appropriate in order to protect the interests of the estate and the Cash Collateral Claimants.

12. Debtor's emergency cash collateral budget proposes to use cash collateral for the purpose of maintaining business operations and for the purpose of administering the estate herein for the benefit of all creditors

13. As shown on the cash budget attached hereto, Debtor believes that the use of cash collateral on an emergency basis will not diminish the value of the estate of the value of assets securing the AGNM claims, and in fact, the continued operations will produce substantially more in revenues than will be consumed in the production thereof.

**Other Proposed Provisions for Use of Cash Collateral**

14. Debtor proposes that any order entered herein shall not constitute the waiver or preclusion of any rights or claims of Cash Collateral Claimants to seek further relief with respect to the subject matter hereof, or with respect to any other matter, and that it likewise shall not constitute the waiver or preclusion of any rights of the Debtor, or of any other creditor herein.

15. Any liens granted against assets acquired or produced post-petition ("Post-petition Collateral" and "Replacement Liens"), whether such assets would constitute "cash collateral" or not, shall secure only the amount of Cash Collateral actually used by the Debtor, and such liens shall attach automatically and be perfected without the need to file financing statements or similar notices, to the same extent that the affected Cash Collateral Claimant's pre-petition liens were perfected.

16. The validity and perfection of the Replacement Liens proposed herein to protect the interests of Cash Collateral Claimants shall survive the conversion of this case to one under chapter seven, the appointment of a trustee under chapter seven or eleven of the Bankruptcy

Code, or the dismissal of this case.

17. The form of order proposed by the Debtor authorizing the emergency use of cash collateral is attached hereto. Debtor proposes that, absent objection to the proposed use, an order substantially conforming to the attached form would be submitted, but Debtor also contemplates that an order ultimately entered may lack some provisions set out in the attached form, or may have material provisions in addition to those in the attached form.

**Notice to Interested Parties**

18. Debtor has attempted to give notice of this Motion to the Cash Collateral Claimants identified above, and other parties in interest with respect hereto, in at least the following manner:

    a. An image or copy of this Motion and all related pleadings, exhibits, and declarations, including any notice of hearing hereon, will be sent, by electronic mail promptly after filing herein, to the legal counsel that most recently pre-petition corresponded with Debtor about the claims that are believed to be secured by cash collateral;

    b. Copies of this Motion and all related pleadings, exhibits, and declarations, including any notice of hearing hereon, will be mailed to the creditors included on the list filed under Rule 1007(d) by first class mail.

    c. The United States Trustee will receive copies of this Motion and all related pleadings, exhibits, and declarations, including any notice of hearing hereon, electronically upon filing of the same.

WHEREFORE, Debtor moves the Court for its order granting authority to use cash collateral as set out herein, and for such other relief as the Court deems appropriate.

                                                        Respectfully submitted by:

Moore, Berkson & Gandarilla, P.C.
Counsel for Debtor
<u>s/ submitted electronically</u>
George M. Moore
Daniel J. Behles
3800 Osuna Rd. NE, Ste. 2
Albuquerque, NM 87109
(505) 242-1218
Fax: 242-2836
mbglaw@swcp.com

M:\Bonestroo\Sun Valley\Sun Valley CC Motion 1-9-13.wpd